**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Raymond Andrews, suing as Raymond D. Andrews individually and on behalf of all others similarly situated,

Plaintiff,

v.

Temple Inland Mortgage Corporation,

Defendant.

Civil No. 00-1999 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Barry G. Reed, Esq. and Hart L. Robinovitch, Esq., Zimmerman Reed, 901 3rd Street North, Suite 100, Minneapolis, Minnesota 55401-4123, appeared on behalf of Plaintiff.

Mitchel H. Kider, Esq. and Leah Schmulewitz Getlan, Esq., Weiner, Brodsky, Sidman & Kider, 1300 19th Street NW, 5th Floor, Washington, D.C. 20036 and Paul B. Kohls, Esq., Rider, Bennett, Egan & Arundel, 2000 Metro Center, 333 South 7th Street, Minneapolis, Minnesota 55402, appeared on behalf of Defendant.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on May 18, 2001, pursuant to Defendant Temple Inland Mortgage Corporation's Partial Motion to Dismiss. In his Complaint, Plaintiff Raymond Andrews alleges: (1) Count I: Breach of Contract; (2) Count II: Violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"); (3) Count III: Unfair and Deceptive Trade Practices; and (4) Count IV: Unjust Enrichment. Plaintiff's claims are centered around two basic contentions: (1) that Defendant has assessed certain mortgage fees in excess of a 1% cap established through regulations generated by the Department of Veterans Affairs ("the VA"); and (2) that Defendant

FILED SEP 24 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

wrongfully paid revenue in the form of a yield spread premium to the bank that originated and closed Plaintiff's mortgage. By its current motion, Defendant seeks to dismiss Counts I, III, and IV of Plaintiff's Complaint, maintaining: (1) that Temple Inland is not the lender and therefore did not assess the fees at issue; and (2) that the relevant fees were not paid by Plaintiff, thus resulting in no damage to Plaintiff. For the reasons set forth below, Defendant's motion to dismiss is denied consistent with the provisions of the Court's Memorandum Opinion and Order.

**Background**

Plaintiff Raymond Andrews, a resident of Minnesota, acquired a mortgage for his home on February 29, 2000. Plaintiff's mortgage was processed by a mortgage broker at Buffalo National Bank ("Buffalo"). Upon providing the relevant funding, however, Defendant Temple Inland Mortgage Corporation ("Temple Inland"), a corporation based in Austin, Texas, simultaneously acquired Plaintiff's mortgage from Buffalo. The funding mechanism used by Temple Inland is known as "table-funding," defined by federal regulations as "a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." 24 C.F.R. 3500.2. The regulations go on to explain that table-funding is not considered a "secondary market transaction" or "a bona fide transfer of a loan obligation in the secondary market which is not covered by RESPA and [VA regulations, except as otherwise provided.]" *Id*; 24 C.F.R. 3500.5(b)(7). While Temple Inland funds conventional, Federal Housing Authority, and Veterans Affairs loans nationwide, this class action concerns only Temple Inland's VA loans.

Plaintiff's mortgage was subject to regulations set forth by the U.S. Department of Veterans Affairs ("VA"), and it was written on standard VA note and mortgage contracts. Both the note and mortgage contract documents contain provisions promising that the Note Holder

will refund any payments made in excess of charges authorized by law.[1] At issue here is the nature and amount of fees charged to Plaintiff at the time his mortgage was processed.

Under VA regulations, "a lender may charge and the veteran may pay a flat charge not exceeding 1 percent of the amount of the loan, provided that such flat charge shall be in lieu of all other charges relating to costs of origination not expressly specified and allowed in this schedule." 38 C.F.R. 36.4312(d)(2). A VA handbook goes on to outline allowable costs and fees intended to be covered by the 1% cap including, but not limited to, the following: (1) loan application or processing fees; (2) fees charged by loan brokers, finders, or other third parties whether affiliated with the mortgagee or not; (3) commitment fees or marketing fees of any secondary purchaser of the mortgage and preparation and recording of assignment of mortgage to such purchaser; and (4) tax service fees. *See* VA Handbook Number 26-7; VA Pamphlet 26-7; Chapter 8: Borrower Fees and Charges and the VA Funding Fee; http://www.hudclips.org/sub_nonhu. . ./hudclips.cgi&p=1&r=10&f= (August 23, 2001). *See also* 38 C.F.R. § 36.4312 (listing and describing allowable fees and charges for VA loans).

The following fees were charged and listed on Plaintiff's HUD-1 Settlement Statement dated February 29, 2000:

| | | |
|---|---|---|
| Line 801 | Loan Origination Fee 1% to Buffalo National Bank | $1,231.14 |
| Line 802 | Loan Discount .500% $615.57 Temple Inland[2] | |

---

[1] The VA Note defines a "Note Holder" as "anyone who takes this Note by transfer and who is entitled to receive payments under this Note."

[2] The fees in this chart that have been tabbed to the right were originally listed under a column entitled "Paid From Borrower's Funds at Settlement." The only other column in the original chart was entitled "Paid From the Seller's Fees at Settlement." Because the remaining fees have been denoted as paid by or to other entities, namely Temple Inland, they have been transcribed immediately following the description of the fee, as they were on the (continued...)

| | | |
|---|---|---|
| Line 803 | Appraisal Fee to BNB | |
| Line 804 | Credit Report Fee to BNB $58 POC | |
| Line 807 | Assumption Fee/Flood Cert Fee To TIMC | $17.00 |
| Line 808 | VA Funding Fee to VA Admin. | $2,414.00 |
| Line 809 | Flood Cert. Fee to BNB | $25.00 |
| Line 810 | Revenue to Lender from TIMC $1846.71 POC | |
| Line 811 | Tax Service to TIMC $81.00 POC | |
| Line 1205 | Assignment $35.00 POC | |
| Line 1304 | Courier Fee to Buffalo National Bank | $25.00 |
| Line 1305 | Admin Fee to TIMC $310 POC | |

Plaintiff contends that several of the fees and charges listed on his mortgage are charges in excess of the 1% cap and are not allowable under any exception. Primarily, Plaintiff focuses on the Line 810 $1,846.71 payment from Temple Inland to Buffalo which Plaintiff characterizes as a "yield spread premium." Pursuant to daily rate sheets published by Temple Inland, Buffalo negotiated an above par interest rate in order to receive the corresponding yield spread premium. Plaintiff contends that the cost of the yield spread premium was improperly passed off to him through his initial payments of the higher interest rate, thus costing him more than the authorized 1% cap.[3] In addition, Plaintiff contends that the Line 1305: Administrative Fee, the Line 1205: Assignment Fee, the Line 807: Assumption Fee, the Line 1304: Courier Fee, and the Line 811 Tax Service Fee should have been included within the 1% charge and do not otherwise constitute allowable charges.

Plaintiff maintains that Buffalo was merely the broker for Temple Inland who was the true lender and thus responsible for charging the fees in excess of the 1% cap. The VA note lists

[2](...continued)
original document.

[3] Plaintiff also alleges that the yield spread premium results in a violation of Section 8 of the Real Estate Settlement Procedures Act ("RESPA"); however, given the scope of Defendant's motion to dismiss, the Court will not address Plaintiff's RESPA claim here.

Buffalo as the "lender," but states, on the last page: "Pay to the Order of Temple Inland Mortgage Corporation without recourse, Buffalo National Bank By Chris Wahl, Title: Mortgage Broker." The Schedule "A" Escrow Authorization, dated February 28, 2000, names Temple Inland as the "lender" and Buffalo as the "agent." In addition, the mortgage provides that the document is to be returned to Temple Inland once it has been recorded.

Defendant challenges Plaintiff's arguments on several grounds. First, Defendant maintains that Buffalo was the original lender collecting all charges; thus, any claim should have been asserted against Buffalo, not Temple Inland. Second, Temple Inland contends that the fees relating to a loan discount (Line 802), "revenue to lender" (Line 810), tax service (Line 811), assignment (Line 1205), and administration (Line 1305) were not paid *by the borrower* and consequently should not be counted toward the 1% cap. Third, Temple Inland maintains that the assumption fee (Line 807) is actually an authorized fee under 38 C.F.R. 36.4312(d)(viii) which allows for the charge, in excess of the 1% cap, for a guaranteed flood-zone determination. Finally, Temple Inland maintains that the yield spread premium does not violate the 1% cap because it is linked directly with the interest rate rather than any fee of origination. As additional support for its position, Temple Inland directs the Court to the history of the VA regulations as evidence of the VA's intention to leave the negotiation of interest rates between the lender and borrower, thus purportedly outside the scope of the relevant regulations here, namely the 1% cap.

Plaintiff has raised claims of breach of contract, violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"), unfair and deceptive trade practices, and unjust enrichment. By its current motion, however, Temple Inland seeks only to dismiss Plaintiff's claims of breach of contract; unfair and deceptive trade practices; and unjust enrichment.

## Discussion

### 1. Standard of Review

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

### 2. Issues

#### a. Count I: Breach of Contract

Plaintiff's breach of contract claim is based on the contention that Defendant charged numerous fees in violation of the VA 1% cap, a regulation to which it agreed to be bound by engaging in the funding of a VA loan. Defendant maintains, however, that Buffalo, not Temple Inland, is the lender against whom any such claim should be made. In addition, Defendant argues that each of the charges that Plaintiff identifies as unauthorized was either excluded from the 1% cap, was not actually paid by the borrower, or was paid by the borrower to Buffalo. The Court finds that if the facts are as Plaintiff has alleged, then Temple Inland was the true lender of Plaintiff's loan and Plaintiff may have a colorable claim that certain fees were paid by Plaintiff in excess of the VA 1% cap.

First, for purposes of this motion, the Court rejects Defendant's argument that it is not the lender and thus is immune from liability. As the 11th Circuit found in *Culpepper v. Inland Mortgage Corp.*, 132 F.3d 692, 696-98 (11th Cir. 1998), when a loan is table-funded the broker never owns the loan and merely processes the loan for the true lender–the funding entity. On the face of the Complaint, Plaintiff's have plead that Plaintiff's loan was table-funded by Temple Inland, the funding entity. In addition, while Buffalo is listed as the lender on the VA note, all other documentation serves to indicate that Temple Inland is the lender, and Buffalo is merely its agent. Accordingly, in addition to any contractual responsibility that would attach if proven the true lender, Temple Inland would also be responsible, under the VA guidelines, for the acts of its agent. *See* VA Handbook 26-7, 1.08. Moreover, at the very least, Plaintiff has alleged facts that, if proven, would establish Temple Inland as a "Note Holder" under the terms of the mortgage. Temple Inland would thus have been bound by the terms of the agreement and obligated to refund any charges over and above those authorized by VA regulations. Thus, for all intents and purposes, Plaintiff has alleged sufficient facts that, if proven, would establish Temple Inland as the lender of Plaintiff's mortgage loan and thus as a properly named Defendant of this action.

Next, the parties focus most of their discussion on the nature of the fee listed at Line 810: Revenue to Lender from TIMC $1,846.71 POC. Plaintiff maintains that the fee is directly linked to the higher interest rate negotiated by the broker at the origination of the loan and that it is recouped from the borrower through the higher monthly payments resulting from the higher interest rate. In essence, Plaintiff argues that the payment of the fee has been structured so as to circumvent the 1% cap, and that the only reason for charging an above par interest rate is to fund the excessive payment to the broker. Defendant, on the other hand, contends that the fee is paid directly by the *lender*, not the borrower, and that its link to the interest rate takes it out of the

realm of origination fees and into an area that the VA has left up to the unregulated negotiations between the broker/lender and the borrower.

The Court disagrees that fees relating to the establishment of an interest rate at the origination of a loan should not be considered a fee of origination. Even if the VA has declined to regulate the rate of interest to be paid by a borrower, that decision does not also preclude the application of VA limits on origination fees to fees paid at the inception of the loan in relation and in addition to the interest rate, regardless of how high or low the rate has been set. Defendant's argument that the fee is not paid by the borrower is also not convincing. To the extent that Plaintiff argues that the fee on Line 810 was wholly dependent on the above par rate of interest and recouped through the very payments of that rate and that the only reason for the above par rate is to fund the payment to the broker, the Court finds that Plaintiff has alleged sufficient facts that, if proven, would establish that indeed the "Revenue to Lender from TIMC" was actually paid by the borrower. If Plaintiff is successful on this front, that fee alone would be in addition to the 1% cap and would support a breach of contract claim.[4]

With respect to the other fees at issue, Defendant argues that the tax service, assignment, and administration fees listed on Lines 811, 1205, and 1305 respectively are not in violation of the 1% cap because they were not paid by the borrower. In support of this argument, Defendant points to the HUD-1 Settlement Statement where such fees are not listed in the column entitled "Paid From Borrower's Funds at Settlement." Plaintiff does not answer this argument directly,

---

[4] To the extent that Defendant argues that the 1% fee listed on Line 801 was not paid by the borrower and therefore also does not count toward the 1% limit, Plaintiff could still prevail if certain facts are established because the total fee on Line 810 is by itself greater than the 1% amount on Line 801.

but states that such fees are not authorized in addition to the 1% cap. While this may be true, in order for a violation to occur it is necessary to prove that they were indeed paid by the borrower.

In addition, Defendant argues that the Courier Fee listed on Line 1304 was paid directly to Buffalo and therefore Temple Inland cannot be held liable for that fee, even if it is in excess of the 1% cap and otherwise unauthorized. As the Court has stated, Temple Inland is responsible for the acts of its agent and is obligated to refund any excessive charge. If indeed, the Courier Charge is determined to be excessive and paid by Plaintiff, then Temple Inland could properly be held liable.

That said, the Court has found that Plaintiff has made a colorable claim of breach of contract at least with respect to the "Revenue to Lender," and thus declines to grant Defendant's motion to dismiss with respect to Count I.

**b. Count III: Unfair and Deceptive Trade Practices**

Plaintiff has also alleged unfair and deceptive trade practices in violation of the relevant Minnesota and Texas statutes. With respect to the parallel claims of putative class members, Plaintiff maintains that the Texas statute will apply because the unlawful acts emanated from corporate headquarters in Texas, or alternatively, that the correlating statutes of each of the other states will apply and are substantively similar to those already invoked in the Complaint. Defendant contends, however, that: (1) the Texas statute does not apply to mortgages; (2) the choice of law provision within the mortgages of Plaintiff and all putative class members dictates that the state law of the state in which the property is located should apply; and (3) Plaintiff has failed to properly plead all of the statutes to be invoked.

While the current action has been styled as a class action, at this stage, it remains an action on behalf of Mr. Andrews. Consequently, the Court need only look to whether a valid

claim has been made with respect to the named Plaintiff. With respect to contractual choice-of-law provisions like the one present here, Minnesota courts traditionally enforce such provisions, barring any evidence of bad faith or an intent to evade the law. *See U.S. Bank Nat'l Assoc. v. Angeion Corp.*, 615 N.W.2d 425, 429 (Minn. Ct. App. 2000), *review denied* (Minn. Oct. 25, 2000); *Hagstrom v. American Circuit Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. Ct. App.1994), *review denied* (Minn. Aug. 24, 1994). In light of Paragraph 15 of Plaintiff's mortgage and the circumstances of this case, it is clear to the Court that the parties intended that Minnesota and federal law should govern any claim arising from the mortgage. There is no evidence before the Court that Paragraph 15 was drafted in bad faith or with the intent to evade another state's law. To the extent that Plaintiff argues that the choice-of-law provision applies only to contract claims and not tort claims, the Court finds that the unfair and deceptive trade practices claim asserted here is so closely related to the interpretation of the contract terms and that which was disclosed in the contract that the claim "falls within the ambit of the express agreement" and should thus be governed by Minnesota law. *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997) (finding district court appropriately applied contractual choice of law provision to claims of negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment).

While Plaintiff has cited both the Minnesota Deceptive Trade Practices Act and the Minnesota Consumer Fraud Act, the Court reads the Complaint only to allege a claim under the Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* which states in relevant part:

> **Subdivision 1. Fraud, misrepresentation, deceptive practices.** The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not

> any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn. Stat. § 325F.69, subd. 1 (1995). Moreover, "merchandise" is defined within the Act to include "any objects, wares, goods, commodities, intangibles, real estate, loans, or services." Minn. Stat. § 325F.68 (2001). It is abundantly clear to the Court from the Complaint itself and the submissions of the parties that Plaintiff has sufficiently alleged the nature of the deceptive practice, when and where it occurred, and by whom. The Court declines to dismiss Count III for lack of particularity under either Fed. R. Civ. P. 8 or 9(b).

Defendant's argument that all fees at issue were sufficiently disclosed to Plaintiff is an argument that the Court finds to be unavailing. As the breach of contract claim has been characterized, by its very nature, the allegation is that the fee was somehow hidden and *not* disclosed to the borrower. Accordingly, a claim of unfair and deceptive trade practices under the Minnesota Consumer Fraud Act has been properly alleged, and the Court declines to dismiss Count III.

**c. Count IV: Unjust Enrichment**

The parties agree that a claim of unjust enrichment requires that no express contract exist between the parties. *Colangelo v. Norwest Mortgage, Inc.*, 598 N.W.2d 14, 19 (Minn. Ct. App. 1999). As the Court has discussed above with respect to Count I, Plaintiff has alleged facts which, if proven, could serve to establish a contractual relationship between the parties. The fact that Defendant has challenged the existence of this relationship as one defense to Count I, yet argues for the dismissal of Count IV based on its asserted existence, albeit between Plaintiff and *Buffalo*, is somewhat perplexing. Nonetheless, to the extent that Plaintiff has brought this claim

in the alternative should no contractual relationship be found to exist between the parties, then the Court finds it premature to dismiss Count IV at this time.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Partial Motion to Dismiss (Doc. No. 12) is **DENIED**.

Dated: September 24, 2001

DONOVAN W. FRANK
Judge of United States District Court