**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Raymond D. Andrews, suing as Raymond D. Andrews individually and on behalf of all others similarly situated,

Plaintiff,

v.

Temple Inland Mortgage Corporation,

Defendant.

Civil No. 00-1999 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

J. Gordon Rudd, Jr., Esq., and Hart L. Robinovitch, Esq., Zimmerman Reed, 651 Nicollet Mall, Suite 501, Minneapolis, MN 55402-4123, and Barry G. Reed, Esq., Zimmerman Reed, 14646 North Kierland Boulevard, Suite 145, Scottsdale, AZ 85254on behalf of Plaintiff.

James L. Forman, Esq., and Paul B. Kohls, Esq., Rider, Bennett, Egan & Arundel, 2000 Metro Center, 333 South Seventh Street, Minneapolis, MN 55402, and Mitchel H. Kider, Esq., Leah Schmulewitz Getlan, Esq., and Donald C. Brown, Jr., Esq., Weiner, Brodsky, Sidman & Kider, 1300 19th Street Northwest, 5th Floor, Washington, DC 20036 and on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on October 25, 2002, pursuant to Plaintiffs' motion for class certification. In the Complaint, Plaintiffs allege breach of contract, violations of Section 8 of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"), unfair and deceptive trade practices, and unjust enrichment related to fees charged by Temple Inland that allegedly exceeded the one percent cap permitted under Plaintiffs' Veteran's Administration ("VA") mortgages and notes. For the reasons set forth below, Plaintiffs' motion for class certification is denied.

DEC 13 2002
FILED
RICHARD D. SLETTEN
JUDGMENT ENTD
DEPUTY CLERK

## Background

Named Plaintiff Raymond Andrews ("Andrews") brought this action challenging Temple Inland's practice of paying yield spread premiums or service release premiums to mortgage brokers on Temple Inland's VA mortgage loans that were in excess of the 1% cap allowed by VA regulations. A brief summary of the facts surrounding Andrews' mortgage and note, extracted from this Court's Order dated September 24, 2001, follows.

Andrews acquired a VA mortgage from Temple Inland on February 29, 2000. Andrews' mortgage was processed by a mortgage broker at Buffalo National Bank. Andrews' mortgage was subject to regulations set forth by the U.S. Department of Veterans Affairs and it was written on standard VA note and mortgage contracts. The note and the mortgage documents contained provisions expressly promising that the Note Holder will refund any payments made in excess of charges authorized by law.

Under VA regulations, "a lender may charge and the veteran may pay a flat charge not exceeding 1% of the amount of the loan, provided that such flat charge shall be in lieu of all other charges relating to costs of origination not expressly specified and allowed in this schedule." 38 C.F.R. 36.4312(d)(2). Allowable costs covered by the 1% cap include, but are not limited to, the following: (1) loan application or processing fees; (2) fees charged by loan brokers, finders, or other third parties whether affiliated with the mortgagee or not; (3) commitment fees or marketing fees of any secondary purchaser of the mortgage and preparation and recording of assignment of mortgage to such purchaser; and (4) tax service fees. *See* VA Handbook Number 26-7; VA Pamphlet 26-7; Chapter 8: Borrower Fees and Charges and

the VA Funding Fee; http://www.hudclips.org/sub_nonhu.../hudclips.cgi&p=1&r=10&f= (August 23, 2001); *see also* 38 C.F.R. § 36.4312.

Andrews alleges that several of the fees and charges listed on his HUD-1 Settlement Statement dated February 29, 2000, were in excess of the 1% cap prescribed by the VA regulations and are not allowed under any exception. Primarily, Andrews focuses on a payment from Temple Inland to Buffalo National Bank, labeled as "Revenue to Lender from [Temple Inland Mortgage Corporation] $1,846.71 POC," which Andrews characterizes as a yield spread premium.

Initially, Andrews alleged that the cost of this so-called yield spread premium resulted in an above-par interest rate that was improperly passed off to him through his initial payments of the higher interest rates, in excess of the authorized 1% cap and in violation of RESPA. [1] Andrews also claims that several other line items on his Settlement Statement, *e.g.*, the Administrative Fee and Courier Fee, were charged to him in excess of the authorized 1% cap.

In August 2000, Andrews filed this action on behalf of himself and other similarly situated Temple Inland borrowers. Andrews now seeks certification of the following two Plaintiff Classes:

> (1) a class of borrowers where Temple Inland funded the loan and paid the referring broker a 'yield spread premium' and/or 'service release premium' [the "RESPA class"]; and
>
> (2) all persons in the United States who obtained a VA loan funded by Temple Inland where the aggregate charges and fees relating to the costs of loan origination, whether paid directly or indirectly (including loan origination fees,

---

[1] Defendants assert that during the discovery process, it was determined that Andrews actually paid a below-par interest rate on his note. While Andrews has not conceded that this is true, he has submitted nothing to the Court to refute Defendants' position.

> processing fees, other broker fees, yield spread premiums, rebates, revenue to lender, service release premiums, and the like) exceeded 1% of the amount of the loan [the "VA class"].

**Discussion**

## 1. Standard of Review

Plaintiffs requesting class certification must satisfy both "implicit" and "explicit" legal requirements. Plaintiffs must first establish that a defined class exists and that the class representatives fall within that class. *See Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657, 659-60 (D. Minn. 1991) (*citing East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Once Plaintiffs have satisfied these implicit requirements, the Plaintiffs must then establish their entitlement to class certification under Rule 23.

In determining the propriety of class action certification, the question is not whether the plaintiffs have stated a cause of action or will ultimately prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178 (1974). Rule 23(a) of the Federal Rules of Civil Procedure sets forth the threshold requirements for certification of a class. Class certification is appropriate when:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to the threshold requirements of Rule 23(a), a class action is only appropriate if one of the circumstances set forth in Rule 23(b) is also present. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Plaintiffs seek certification under Rule 23(b)(2) or

Rule 23(b)(3). Rule 23(b)(2) applies to situations in which class-wide injunctive or declaratory relief is appropriate. Rule 23(b)(3) allows for certification of a class when common questions of law or fact predominate over individual questions and class action is a superior method for resolving the claims.

The party seeking class certification bears the burden of establishing each prerequisite element to certification. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). A Court will only certify a class if, after "rigorous analysis," the Court is satisfied that all of the requirements of Rule 23 have been met.

**2. The RESPA Class**

This litigation is one of several cases across the country bringing a RESPA challenge against lenders who pay yield spread premiums or service release premiums to mortgage brokers. Plaintiffs' proposed RESPA class includes borrowers whose mortgage loans were funded by Temple Inland and who paid a yield spread premium or service release premium on such loans.

In March 21, 2002, the Eighth Circuit Court of Appeals released an opinion overturning a class certification by this Court in a case with a proposed class quite similar to the proposed class here. *See Glover v. Standard Fed. Bank*, 283 F.3d 953 (8th Cir. 2002). The plaintiffs in *Glover* had challenged Standard Federal's practice of paying a yield spread premium to its mortgage brokers. Prior to appeal, this Court certified a nationwide class of borrowers who had obtained a mortgage financed by Standard Federal and brokered by any mortgage broker.

In addressing the class certification issue on appeal, the Eighth Circuit first held that RESPA's statutory language and the identically-worded HUD regulations were ambiguous as to whether such payments were prohibited by RESPA. *Id.* at 961. The court then held that the

HUD Policy Statements interpreting RESPA and the HUD regulations were reasonable and entitled to controlling deference on this matter. *Id.* at 962-63; *see* Real Estate Settlement Procedures Act (RESPA) Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, 64 Fed. Reg. 10080, 10081 (March 1, 1999) ("HUD Policy Statement I");[2] Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed. Reg. 53052, 53054 (October 18, 2001) ("HUD Policy Statement II").[3] Under the two-part test laid out in HUD Policy Statement I and further clarified in HUD Policy Statement II, a loan-by-loan analysis is required to determine whether a yield spread premium paid by a lender to a mortgage broker is unreasonable and thus violates RESPA. *Id.* at 962-63. Based upon the test as laid out in these two policy statements, the Eighth Circuit

---

[2] HUD Policy Statement I characterizes the two-part test as follows:

> the first question is whether goods or facilities were actually furnished or services were actually performed for the compensation paid . . . [t]he second question is whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

HUD Policy Statement I, at 10084.

[3] HUD Policy Statement II states:

> in order to discern whether a yield spread premium was for goods, facilities, or services under the first part of the HUD test, it is necessary to look at each transaction individually, including examining all of the goods or facilities provided or services performed by the broker in the transaction, whether the goods, facilities or services are paid for by the borrower, the lender, or partly by both.

HUD Policy Statement II, at 53055.

reversed this Court's class certification, holding that a case-specific inquiry, not a class action, was appropriate to determine RESPA civil liability and damages in such cases. *Id.* at 965.

On the record before the Court, Plaintiffs' proposed RESPA class is essentially indistinguishable from the class that was denied certification by the Eighth Circuit in *Glover.* Plaintiffs wish to certify a RESPA class of borrowers whose loans were funded by Temple Inland and for which a yield spread premium or service release premium was paid. Plaintiffs argue that the proposed class is distinguishable from that in *Glover* because here, any fees paid in excess of the 1% cap provided by VA regulations are *per se* unreasonable and thus violate RESPA.

The Court finds that the proposed class here demands an individualized inquiry under the same theory as *Glover.* Notably, the case-specific inquiry demanded by HUD Policy Statement II clearly contemplates a case-by-case examination of whether the goods, facilities, or services were paid for by the borrower, the lender, or both parties. *See* HUD Policy Statement II, at 53055. The 1% cap does not dismiss this requirement. Furthermore, although Plaintiffs assert that the 1% cap distinguishes their proposed RESPA class from that in *Glover*, Plaintiffs have not limited their RESPA class to only VA loans or to only those VA loans where such a yield spread premium or service-release premium or revenue to lender exceeded the 1% cap.

Even in the absence of *Glover*, the Court is not convinced that Plaintiffs have met their burden to demonstrate that the class requirements are met. Namely, Andrews has not shown that he paid a yield spread premium or a service-release premium and thus that he falls within the class definition. Thus, Andrews has not demonstrated that he meets the requirements of commonality, typicality, or adequacy of representation as demanded by Rule 23.

In light of the Eighth Circuit's analysis in *Glover* and their adoption of the policies stated in the HUD Policy Statements, each loan in Plaintiffs' proposed class demands a case-specific inquiry. Thus, the Court respectfully denies class certification of the Plaintiffs' proposed RESPA class.

**3. The VA Class**

Plaintiffs' proposed VA class stems from Plaintiffs' claim that Temple Inland's "revenue to lender" payments to mortgage brokers violate the o1% cap on VA loan origination fees because, by virtue of increased or above-par interest rates, the borrowers ultimately fund such fees.

Defendant alleges that Plaintiffs' class fails for a number of reasons. First, Defendant asserts that Andrews lacks the prerequisite standing to bring such an action because he has not suffered the same injury that he attributes to the class. Second, Defendant contends that Andrews cannot meet the Rule 23(a) requirements of adequacy of representation, typicality, and commonality. Finally, Defendant alleges that Andrews cannot satisfy the requirements of Rule 23(b) because he cannot demonstrate that common interests predominate.

As to the VA class, the Court need not address the issues brought up by the reasonableness inquiry demanded by HUD Policy Statements I & II, since that inquiry only applies to interpretations of yield spread premiums and service-release premiums in RESPA actions. Furthermore, unlike Plaintiffs' proposed RESPA class, the VA class does not rely solely upon yield spread premiums or service-release premiums as a basis for inclusion in the class.

**a. Standing**

Without engaging in protracted analysis, the Court finds that Andrews has suffered an injury-in-fact related to his claim and thus that Andrews does have standing to bring such claims. Specifically, Andrews asserts that, by virtue of the "Revenue to Lender" payment and other administrative and processing fees, he was charged in excess of the 1% cap allowed by VA regulations. The description of the VA class that Andrews attempts to represent does not address above- or below-par interest rates. Thus, even if Andrews's mortgage was at a below-par interest rate, Andrews's injury is sufficient to provide him standing for at least a portion of the VA class that he attempts to certify.

**b. Rule 23(a) and Rule 23(b) Requirements**

More troubling to the Court is Andrews's ability to establish that he has met the class requirements under Rules 23(a) and 23(b). Specifically, Andrews's claims are not common or typical of the class that he wishes to certify. Andrews did not pay a yield spread premium, rebate, or service release premium. Thus, Andrews does not meet the commonality or typicality requirements of Rule 23(a) as to the entire class that he attempts to certify.

While the class could be narrowed to include only those fees that Andrews himself paid (*i.e.*, processing fees, other broker fees, revenue to lender), the common question of law asserted by Andrews is problematic as well. Andrews asserts that the question of law common to the class is whether a lender may "circumvent the 1% fee limitation through direct charges or indirect charges by paying its brokers extra money and recouping it by inflating the interest rate on the loan." Andrews has not established that he paid an inflated interest rate on his VA loan; in fact, he has done nothing to rebut Temple Inland's assertions that he paid a below-par rate on his

loan. Andrews has not met his burden of establishing that common questions of law or fact predominate, as required by Rule 23(b). Thus, Plaintiffs' motion for class certification of the VA class is respectfully denied.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiffs' Motion for Class Certification (Doc. No. 28) is **DENIED**.

Dated: December 13, 2002

DONOVAN W. FRANK
Judge of United States District Court